**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Fahring, | No.  CV-25-03810-PHX-JAT (DMF) |
| Petitioner, | |
| v. | **ORDER** |
| Ryan Thornell, et al., | |
| Respondents. | |

## I.    SUMMARY

In October 2025, Petitioner Paul Fahring ("Petitioner" and/or "Farhing") filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition") (Doc. 1).  This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 7 at 4).

This matter is presently before the Court on the "Motion for an order from the court requiring the Respondents to correct the record and furnish the missing materials in their possession pertinent to this case, a Failure to comply with Rule 5(c)" (or "Motion") (Doc. 13) filed by Petitioner.  Respondents filed a response to the Motion ("Response") (Doc. 14).  Thereafter, Petitioner filed a reply in support of the Motion ("Reply") (Doc. 15).  This matter is also before the Court on the Court's review of the Petition and associated filings, including exhibits thereto (Docs. 1, 1-1, 1-2, 1-3, 1-4, 1-5, 10, 10-1, 10-2, 16).

Upon review of the briefing on Petitioner's Motion and associated exhibits (Docs.

13, 13-1, 14, 15), the briefing on Petitioner's Petition and associated exhibits (Docs. 1, 1-1, 1-2, 1-3, 1-4, 1-5, 10, 10-1, 10-2, 16), the record in this matter, and applicable law, the Court will deny Petitioner's "Motion for an order from the court requiring the Respondents to correct the record and furnish the missing materials in their possession pertinent to this case, a Failure to comply with Rule 5(c)" (Doc. 13).

Nevertheless, the Court will require Respondents to file a supplemental answer addressing (1) whether Petitioner waived a Ground Two constitutional double jeopardy claim in light of *Class v. United States*, 583 U.S. 174, 178-85 (2018), *United States v. Broce*, 488 U.S. 563, 574-76 (1989), *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974), and *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975); and (2) regarding the merits of Petitioner's Ground Two constitutional double jeopardy claim.

## II.    PROCEDURAL POSTURE

Petitioner initiated these Section 2254 habeas proceedings in October 2025 regarding his convictions and sentences in Pinal County Superior Court case number CR201402338 (Doc. 1).  The Court's Screening and Service Order regarding the Petition recounts:

> In his Petition, Petitioner names Ryan Thornell as Respondent and the Arizona Attorney General as an Additional Respondent.  Petitioner raises two grounds for relief.
>
> In **Ground One**, Petitioner claims his Fifth, Sixth, and Fourteenth Amendment rights were violated because his conviction and sentence are illegal, there is no factual basis to support his convictions and sentence, and he is actually innocent.  In **Ground Two**, he asserts his Fifth, Sixth, and Fourteenth Amendment rights were violated because his conviction and sentence are illegally multiplicitous, he is actually innocent, and his conviction violates the prohibition against double jeopardy.
>
> Petitioner contends he presented these issues to the Arizona Court of Appeals and Arizona Supreme Court.  The Court will require Respondents to answer the Petition. 28 U.S.C. § 2254(a).

(Doc. 7 at 1-2).

Petitioner submitted numerous attachments with his Petition (*see* Doc. 1 at 12-37,

38; Doc. 1-1 at 2-3):  a memorandum in support of his Petition (Doc. 1 at 12-37); a motion requesting an evidentiary hearing (*Id.* at 38); the September 30, 2014, notice of supervening indictment notifying Petitioner that he had been indicted on ten counts of sexual exploitation of a minor (Doc. 1-1 at 4-6); the signed plea agreement under which Petitioner agreed to plead guilty to one count of sexual exploitation of a minor and two counts of attempted sexual exploitation of a minor (*Id.* at 7-10); the transcript from Petitioner's sentencing proceedings in the Pinal County Superior Court (*Id.* at 11-19);  the Pinal County Superior Court's order extending Petitioner's time to file a Rule 32 petition to December 18, 2023 (*Id.* at 20-21); Petitioner's pro per post-conviction relief ("PCR") petition filed in the Pinal County Superior Court (*Id.* at 22-44);  the state's response to Petitioner's PCR petition (*Id.* at 45-50; Doc. 1-2 at 1-5); Petitioner's reply in support of his PCR petition (Doc. 1-2 at 6-18); Petitioner's June 1, 2024, "Motion for Emergency Injunction" filed with the Arizona Supreme Court alleging that the state was withholding documents from Petitioner and asking the supreme court to order state officials to send various documents to Petitioner (*Id.* at 19-27); the Pinal County Superior Court's order denying Petitioner's PCR petition (*Id.* at 28-29); Petitioner's amended petition for review filed with the Arizona Court of Appeals on July 15, 2024 (*Id.* at 30-45); the Arizona Supreme Court's order directing the Pinal County Clerk of Court to file a certificate of service affirming that pertinent documents were sent to Petitioner and denying as moot Petitioner's "Motion for Emergency Injunction" (*Id.* at 46-49); Petitioner's "Request for Findings of Fact and Conclusions of Law" asking the Pinal County Superior Court to explain its decision denying Petitioner's PCR petition (*Id.* at 50-52); the Pinal County Superior Court's order granting Petitioner an extension of time to file a petition for review with the Arizona Court of Appeals and denying Petitioner's request for clarification (Doc. 1-3 at 1-2); the state's response to Petitioner's petition for review (*Id.* at 3-21); Petitioner's reply in support of his petition for review (*Id.* at 22-35); the Arizona Court of Appeals' December 4, 2024, memorandum decision granting review but denying relief on Petitioner's petition for review (*Id.* at 36-39); Petitioner's "Request for Findings of Fact and Conclusions of Law"

asking the Arizona Court of Appeals to explain its decision denying relief on Petitioner's petition for review (*Id.* at 40-41); the Arizona Court of Appeals' order denying Petitioner's "Request for Findings of Fact and Conclusions of Law" (*Id.* at 42-43); Petitioner's motion for reconsideration asking the Arizona Court of Appeals to reconsider its December 4, 2024, memorandum decision granting review but denying relief (*Id.* at 44-50; Doc. 1-4 at 1-11); the Arizona Court of Appeals' order denying Petitioner's motion for reconsideration (Doc. 1-4 at 12-13); Petitioner's "Application for Issuance of Writ Under Original Jurisdiction Pursuant to ARS § 13-4037(A)(1)" asking the Arizona Supreme Court to "correct an illegal sentence issued in CR201402338 (*Id.* at 14-42); the Arizona Supreme Court's order dismissing Petitioner's "Application for Issuance of Writ Under Original Jurisdiction Pursuant to ARS § 13-4037(A)(1)" (*Id.* at 43-46); the Arizona Supreme Court's order denying Petitioner's motion asking the court to reconsider its order dismissing Petitioner's "Application for Issuance of Writ Under Original Jurisdiction Pursuant to ARS § 13-4037(A)(1)" (*Id.* at 47-49); Petitioner's "Motion to Correct the Order" asking the Arizona Supreme Court to correct its order denying Petitioner's "Application for Issuance of Writ Under Original Jurisdiction Pursuant to ARS § 13-4037(A)(1)" (*Id.* at 50; Doc. 1-5 at 1-3); the Arizona Supreme Court's order taking no action on Petitioner's "Motion to Correct the Order" and directing the clerk of court to close the file and accept no further filings on the matter (Doc. 1-5 at 4-5); the Arizona Court of Appeals' order allowing the state to respond to Petitioner's petition for review no later than September 4, 2024 (*Id.* at 6-7); a letter reflecting that the Pinal County Clerk of the Superior Court electronically transmitted the record for appeal to the Arizona Court of Appeals (*Id.* at 8-10); Petitioner's "Request for Trial Court Record" filed with the Arizona Court of Appeals asking the court of appeals to print out and mail a copy of the record to Petitioner (*Id.* at 11-14); Petitioner's "Motion to Compel and Notice of Non-Compliance" asking the Arizona Court of Appeals to order the Pinal County Clerk of the Superior Court to send Petitioner a printed copy of the trial court record (*Id.* at 15-19); and the Arizona Court of Appeals' order denying Petitioner's "Motion to Compel and Notice of Non-

1   Compliance" (*Id.* at 20-21).

2       On December 1, 2025, Respondents filed an Answer to Petition for Writ of Habeas

3   Corpus ("Answer") (Doc. 10), in which Respondents concede that the Petition was timely

4   filed (*Id.* at 4-5).  Respondents argue that the Court should deny the Petition and dismiss it

5   with prejudice because Petitioner's claims are procedurally defaulted without excuse, not

6   cognizable, and/or waived by virtue of Petitioner's guilty plea (*Id.* at 5-12).

7       In their Answer, Respondents represent:

8       Pursuant to Rule 5(c) of the Rules Governing § 2254 Cases, Respondents
9       submit the transcript of the change of plea hearing (12/15/15) (Exh. Q) in
10      support of this answer.

11      Respondents inform this Court that their file contains the following complete
12      transcripts: pretrial hearing (4/28/15); and sentencing (3/8/16). Respondents
        are aware of the following additional proceedings that either were not
13      transcribed (or listed in the state trial court docket as having been transcribed)
        or were transcribed and not in their possession: arraignment (10/3/14);
14      pretrial hearing (11/4/14); pretrial hearing (12/2/14); pretrial hearing
        (1/20/15); pretrial hearing (2/17/15); pretrial hearing (3/17/15); pretrial
15      hearing (12/8/15); and hearing continuing sentencing (1/19/16).
16

17      Respondents submit copies of documents from the state trial court
        proceedings that are relevant to this answer as Exhibits A–I, and Q, and from
18      the state appellate court proceedings that are relevant to this answer as
        Exhibits J–P.
19

20  (Doc. 10 at 3-4).

21      With the Answer, Respondents attached the following exhibits from the proceedings

22  in the Pinal County Superior Court (*see* Doc. 10-1 at 1):  the September 29, 2014,

23  indictment charging Petitioner with ten counts of sexual exploitation of a minor (Doc. 10-

24  1 at 2-5 (Exhibit A)); the signed plea agreement under which Petitioner agreed to plead

25  guilty to one count of sexual exploitation of a minor and two counts of attempted sexual

26  exploitation of a minor (*Id.* at 6-9 (Exhibit B)); the minute entry from Petitioner's

27  sentencing hearing  (*Id.* at 10-15 (Exhibit C)); the notice of no colorable claims filed by

28  Petitioner's appointed PCR counsel in the Pinal County Superior Court averring that upon

review of the plea agreement and record counsel found no colorable PCR claims (*Id.* at 16-27 (Exhibit D)); the Pinal County Superior Court's order allowing Petitioner to file a pro per PCR petition no later than December 15, 2016 (*Id.* at 28-29 (Exhibit E)); Petitioner's pro per PCR petition (*Id.* at 30-72 (Exhibit F)); the state's response to Petitioner's pro per PCR petition (*Id.* at 73-83 (Exhibit G)); Petitioner's reply in support of his pro per PCR petition (*Id.* at 84-96 (Exhibit H)); the Pinal County Superior Court's order denying Petitioner's pro per PCR petition (*Id.* at 97-98 (Exhibit I)); and the transcript from Petitioner's change of plea hearing held on December 15, 2015 (Doc. 10-2 at 151-214 (Exhibit Q)).

Respondents also attached with their Answer the following exhibits from the proceedings in the Arizona Court of Appeals (*see* Doc. 10-2 at 1): Petitioner's June 13, 2024, petition for review asking the Arizona Court of Appeals to review the trial court's denial of his pro per PCR petition (Doc. 10-2 at 2-103 (Exhibit J)); the state's response to Petitioner's petition for review (*Id.* at 104-122 (Exhibit K)); Petitioner's reply in support of his petition for review (*Id.* at 123-136 (Exhibit L)); the Arizona Court of Appeals' December 4, 2024, memorandum decision granting review but denying relief on Petitioner's petition for review (*Id.* at 137-140 (Exhibit M)); the Arizona Court of Appeals' order denying a motion for reconsideration (*Id.* at 141-143 (Exhibit N)); the Arizona Court of Appeals' June 9, 2025, mandate (*Id.* at 144-147 (Exhibit O)); and the Arizona Court of Appeals' order denying a motion to correct mandate (*Id.* at 148-150 (Exhibit P))

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 7 at 4).

## III.    SUMMARY OF PERTINENT STATE COURT PROCEEDINGS

Based on the state court record materials from the parties presently before this Court, on September 29, 2014, a Pinal County Superior Court grand jury indicted Petitioner on ten counts of sexual exploitation of a minor (Doc. 10-1 at 3-5) Each of the ten counts in the indictment refers to a different image or video knowingly possessed on September

17, 2014 (*Id.*).  For example, Count 1 charged knowing possession of an image labeled "Megan smiles as Dad probes that child ass.jpg"; Count 2 charged knowing possession of an image labeled "Megan opens on bathroom floor.jpg"; and Count 3 charged knowing possession of an image labeled "Megan holds dads cock.jpg" (*Id.* at 3).

On September 30, 2014, which was the day after the indictment was issued, the clerk of the superior court mailed Petitioner a "Notice of Supervening Indictment" notifying that Petitioner had been indicted on ten counts of sexual exploitation of a minor and that his arraignment was set for October 3, 2014 (Doc. 1-1 at 5-6).

On December 15, 2025, and with the assistance of counsel, Petitioner entered into a plea agreement under which he agreed to plead guilty to one count of sexual exploitation of a minor and two counts of attempted sexual exploitation of a minor (Doc. 1-1 at 8-10; Doc. 10-1 at 7-9).  At the settlement conference preceding the change of plea hearing, the prosecutor informed the court that there were two open plea offers (Doc. 10-2 at 174-75).  Under the first offer Petitioner would plead guilty to one count of sexual exploitation of a minor and face imprisonment of 10 to 24 years and also would plead guilty to two counts of attempted sexual exploitation with lifetime probation on both counts (*Id.* at 174).  The second offer was identical to the first offer other than that Petitioner would face 17 years' imprisonment on the sexual exploitation count (*Id.* at 175).  After further discussion between the court, the prosecutor, Petitioner, and Petitioner's attorney (*see generally id.* at 157-200), Petitioner agreed to the plea offer with 17 years' imprisonment on the sexual exploitation count and lifetime probation on two counts of attempted sexual exploitation (*Id.* at 200-01).

After the court gave Petitioner and Petitioner's attorney time to go over the plea agreement and sign it (*Id.*), the court began the plea colloquy with Petitioner.  Petitioner affirmed that he wanted to plead guilty to "Count 1, Sexual Exploitation of a Minor, a class 2 felony, dangerous crime against children. And also to Counts 2 and 3 as amended, Attempted Sexual Exploitation of a Minor, a class -- both class 3 felonies and dangerous crimes against children" (*Id.* at 201-02).

During the plea colloquy, Petitioner stated that he has a Ph.D., that he reads and understands English, and that he took Prozac and Seroquel within the last 24 hours but neither affected his ability to accurately perceive the court proceedings (*Id.* at 202). Petitioner's counsel averred that counsel had no cause to be concerned regarding Petitioner's ability to understand the court proceedings (*Id.* at 202-03).

Additionally, Petitioner confirmed that he placed his initials on the plea agreement next to each paragraph after reading the paragraph and having his attorney explain each paragraph and answer Petitioner's questions (*Id.* at 203).  Petitioner further stated that he signed the agreement after reading the entire document as well as having his attorney explain the entire document and answer Petitioner's questions regarding the plea agreement (*Id.*).  Petitioner affirmed that he was not being threatened, forced, or coerced into pleading guilty to the offenses and that he was not promised anything outside of the plea agreement (*Id.* at 203-04).  Petitioner affirmed that he understood the penalties associated with his guilty pleas (*Id.* at 204-05).  In further plea colloquy, the court explained to Petitioner:

> THE COURT: [I]f you are not a citizen of the United States, pleading guilty or no contest to a crime may affect your immigration status. Admitting guilt may result in deportation, even if the charge is later dismissed.
>
> Your plea or admission of guilt could result in your deportation or removal, could prevent you from ever being able to get legal status in the United States, or could prevent you from becoming a United States citizen.
>
> By pleading guilty you are giving up certain constitutional rights. They are listed in paragraph 11 of your plea agreement.[1]  I'm going to go over your

---

[1] Paragraph 11 of the plea agreement was initialed by Petitioner and states:

I understand that I am giving up the following rights by pleading GUILTY:

    a.  My right to a jury trial, including the right to a jury determination of any aggravating sentencing factor(s), including my right to a jury determination of aggravating circumstances beyond a reasonable doubt.  I further understand that the court, using a preponderance of evidence standard, may find the existence of aggravating or mitigating circumstances which may impact my sentence or disposition **and may use factors under the "catch-all" aggravator as the sole factor(s) for increasing my sentence regardless of whether the State alleged aggravated factors**.  The court may find the existence of aggravating

rights with you at this time.

You are giving up your right to remain silent, and your privilege against self-incrimination, and the right to refuse to testify.

You're giving up your right to confront and cross-examine witnesses to testify against you; the right to have a jury determine your innocence or guilt; and have the jury determine any factors which could aggravate your sentence.

If you enter into a plea of guilty or no contest, the Court, not the jury, will decide whether aggravating factors exist. You are giving up the right to have subpoenas issued for your witnesses so they can attend your trial and testify on your behalf.

You are giving up the right to present other evidence on your own behalf, and the right to testify, if you choose to do so. You are also giving up the presumption that you are innocent until proven guilty beyond a reasonable doubt.

You are also giving up your right to file an appeal. Because you are giving up your right to file an appeal, your only right to seek review of these proceedings is to file a petition for Post-Conviction Relief. But you must do that within 90 days of sentencing. If that petition is ultimately denied by the trial courts, you may then petition the appellate court of the state for review of that denial, but such review may or may not be granted.

---

or mitigating circumstances without regard to the Arizona Rules of Evidence, and from any source, including, but not limited to a pre-sentence report, letters to the court, victim or witness statements or any other reliable source.

    b.   My right to confront the witnesses against me and to cross-examine them.

    c.   My right to present evidence and call witnesses in my defense, knowing the court will compel them to appear and testify at trial.

    d.   My right to be represented by counsel, appointed free of charge, if I cannot afford to hire, at all stages of the proceedings.

    e.   My right to remain silent, to refuse to be a witness against myself, and to be presumed innocent until proven guilty beyond a reasonable doubt. And

    f.   My right to appeal the judgment and sentence to a higher court.

(Doc. 1-1 at 10; Doc. 10-1 at 9).

1

2       Sir, do you understand all those things?

3       THE DEFENDANT: Yes.

4       THE COURT: Do you wish to waive your constitutional rights and plead
5       guilty to these offenses at this time?

6       THE DEFENDANT: Yes.

7   (Doc. 10-2 at 207-08).  The court continued:

8
        THE COURT: All right. I will ask formally, how do you plead to Count 1,
9       Sexual Exploitation of a Minor, a class 2 felony, dangerous crime against
10      children, committed in violation of those statutes listed in your plea
        agreement, committed in or near Casa Grande, Arizona, within Pinal County,
11      on or between September 17, 2014, guilty or not guilty?

12      THE DEFENDANT: Guilty.
13
        THE COURT: And how do you plead to Counts 2 and 3 as amended,
14      Attempted Sexual Exploitation of a Minor, class 3 felonies, dangerous crimes
15      against children, in violation of those statutes listed in your plea agreement,
        both committed in Casa Grande, Arizona, within Pinal County, and both
16      committed on or between September 17, 2014, guilty or not guilty?

17      THE DEFENDANT: Guilty.

18
        THE COURT: And that would be to both 2 and 3.
19
        Sir, do you understand that?
20

21      THE DEFENDANT: Yes.

22  (Doc. 10-2 at 209).  Thereafter, Petitioner's attorney set forth the factual basis for each
23
    Count 1, Count 2 as amended, and Count 3 as amended:
24

25      [PETITIONER'S ATTORNEY:] On or about September 17th of 2014, in or
        near Casa Grande, which is in Pinal County, jurisdiction of this Court, Mr.
26      Paul Fahring knowingly possessed images of minor children that were in
        sexually ex- -- sexually exploitative -- knowingly possessed images of minor
27      children that were in sexually explicit positions. That's as to Count 1. The
        minor children in – depicted in those images were below the age of 15. Mr.
28

- 10 -

Fahring knew that those minor children in those images were below the age of 15 when he possessed them.

As to Count 2, on the same date and time, on or about September 17th of 2014, in or near Pinal – in or near Casa Grande, which is in Pinal County, jurisdiction of this Court, Mr. Paul Fahring attempted to possess a image of a minor that was under the age of 15 that was in a sexually explicit -- sexually explicit position. Again, the minor in Count Number 2 was below the age of 15. Mr. Fahring knew that the minor in that image was below the age of 15.

As to Count 3, same date and time, on or about September 17, 2014, in or near Casa Grande, which is in Pinal County, jurisdiction of this Court, Mr. Paul Fahring attempted to possess another picture of a minor that was engaged in a sexually explicit – explicative position --

THE COURT: Or exploitive –

[PETITIONER'S ATTORNEY:] -- or exploitive position. Again, the minor in that Count Number 3 position -- Count Number 3 count was below the age of 15. Mr. Fahring knew that the minor in Count 3 was below the age of 15.

THE COURT: All right. And, Mr. Wilkison, would -- those images, they would contain images of minors either engaged in sexual conduct or the focus being on the genitals and exploitive exhibition?

[PETITIONER'S ATTORNEY:] That's correct. In all three, yes.

(Doc. 10-2 at 209-211). Petitioner agreed to the factual basis:

THE COURT: All right. Sir, you heard what your attorney says. Is that, in fact, what happened in those three counts?

THE DEFENDANT: Yes.

(*Id.* at 211).[2]

The court found that Petitioner's guilty pleas were knowingly, intelligently, and voluntarily made (*Id.*). The court accepted Petitioner's guilty pleas (*Id.*). At the March 2016 sentencing hearing, the court sentenced Petitioner to 17 years' imprisonment on

---

[2] Indictment Count 1 regarded an image labeled "Megan smiles as Dad probes that child ass.jpg"; Count 2 regarded an image labeled "Megan opens on bathroom floor.jpg"; Count 3 charged regarded an image labeled "Megan holds dads cock.jpg" (Doc. 10-1 at 3).

Count 1 - sexual exploitation of a minor - and lifetime probation on each Counts 2 and 3 - attempted sexual exploitation of a minor (Doc. 1-1 at 16; Doc. 10-1 at 11-15).

Petitioner timely filed a PCR notice with the trial court (Doc. 10-1 at 18). After reviewing the plea agreement and the trial court record, Petitioner's appointed PCR counsel filed a notice of no colorable claims averring that counsel had found no colorable PCR claim (*Id.* at 17-27). Petitioner thereafter filed a pro per PCR petition arguing that Petitioner's sentences on Counts 2 and 3 should be vacated as unconstitutionally multiplicitous under the Double Jeopardy Clause of the United States Constitution and that Petitioner was sentenced under the incorrect Arizona statute on Count 1 (*Id.* at 31-72). After the state filed a response and Petitioner filed a reply (*Id.* at 74-83, 85-96), the trial court denied Petitioner's pro per PCR petition (*Id.* at 98).

On June 13, 2024, Petitioner filed a petition for review with the Arizona Court of Appeals arguing that Petitioner's sentences on Counts 2 and 3 should be vacated as unconstitutionally multiplicitous under the Double Jeopardy Clause of the United States Constitution and that Petitioner was sentenced under the incorrect Arizona statute on Count 1 (Doc. 10-2 at 3-17). On July 15, 2024, Petitioner filed an amended petition for review reasserting his arguments (Doc. 1-2 at 31-45; Doc. 13 at 17-31). The state filed a response; Petitioner filed a reply (Doc. 10-2 at 105-122, 124-136). On December 4, 2024, the Arizona Court of Appeals granted review but denied relief (*Id.* at 138-40). *State v. Fahring*, No. 2 CA-CR 2024-0122-PR, 2024 WL 4976320, at *1-2 (Ariz. Ct. App. Dec. 4, 2024). In its memorandum decision, the Arizona Court of Appeals explained:

¶4 Fahring reurges his claims on review, first asserting that his sentences are multiplicitous. "A charge is multiplicitous if it charges a single offense in multiple counts and thereby raises the potential for multiple punishments for a single act." *State v. Scott*, 243 Ariz. 183, ¶ 9, 403 P.3d 595 (App. 2017). Fahring reasons that his possession of multiple images is a single offense because the sexual exploitation statute, A.R.S. § 13-3553, prohibits possession of "any visual depiction," which, in his view, means "one or more" depictions.

¶5 But, by pleading guilty, Fahring waived all non-jurisdictional defects

- 12 -

unrelated to the voluntariness of his plea, including deprivations of constitutional rights. *State v. Flores*, 218 Ariz. 407, ¶ 6, 188 P.3d 706 (App. 2008). Accordingly, even were his argument meritorious, after pleading guilty to three offenses, he cannot now argue he committed only a single offense. And, in any event, we rejected this argument in 2012 in *State v. McPherson*, concluding that "separate convictions and punishments for different images on the same DVD are constitutionally permissible because the legislature intended the unit of prosecution to be each individual 'depiction.'" 228 Ariz. 557, ¶ 7, 269 P.3d 1181 (App. 2012) (quoting § 13-3553(A)(2)).

¶6 Fahring also repeats his argument that the factual basis for his plea did not establish the age of his victims, thus rendering his sentence under § 13-705 illegal. He seems to suggest the state was required to identify the victims or provide the photographs to the superior court. But, at his change of plea hearing, Fahring admitted the children in the images he admitted possessing were under the age of fifteen. Nothing more was needed. *See* Ariz. R. Crim. P. 17.3(b) (court may consider "defendant's statements" in determining factual basis).

(Doc. 10-2 at 138-40). *Fahring*, 2024 WL 4976320, at *1-2.

Petitioner did not file a petition for review with the Arizona Supreme Court (*Id.* at 145). The Arizona Court of Appeals issued the mandate on June 9, 2025 (*Id.*).

## IV.   RULES FRAMEWORK

In relevant part, Rule 5 of the Rules Governing Section 2254 Cases provides:

**(c) Contents: Transcripts.** The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.

**(d) Contents: Briefs on Appeal and Opinions.** The respondent must also file with the answer a copy of:

(1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding;

(2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and

(3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.

In addition, Rule 7 of the Rules Governing Section 2254 Cases provides:

**(a) In General.** If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

**(b) Types of Materials.** The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

**(c) Review by the Opposing Party.** The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Further, Rule 6 of the Rules Governing Section 2254 Cases provides in pertinent part:

**(a) Leave of Court Required.** A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

**(b) Requesting Discovery.** A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

*See also* Rule 10 of the Rules Governing Section 2254 Cases ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636.").

## V. DISCUSSION

In his Motion, Petitioner argues that Respondents have failed to comply with their obligations under Rule 5 of the Rules Governing Section 2254 Cases (Doc. 13). Petitioner asserts that Exhibit A and Exhibit J attached to Respondents' Answer must be corrected because "Exhibit A is the wrong indictment [because] [i]t was supervened" and "Exhibit J

of the Respondents' record submission should be replaced with . . . the amended Petition for Review filed and addressed within the AZ Court of Appeals" (*Id.* at 2-5). Petitioner also insists that transcripts of Petitioner's statements on 9/17/2014, the transcript of the grand jury proceedings on 9/29/2014, and the recording of the grand jury on 9/29/2014 must be added to the record (*Id.* at 5-9). Petitioner attached as exhibits to his Motion: a copy of a document entitled "Notice of Supervening Indictment" which informed Petitioner of the indictment filed against him (*Id.* at 13-15) and a copy of Petitioner's amended petition for review filed with the Arizona Court of Appeals (*Id.* at 16-31)—both of which Petitioner attached to his Petition initiating these habeas proceedings (*see* Doc. 1-1 at 5-6; Doc. 1-2 at 31-45).

Petitioner also included as attachments: a "Motion for Emergency Injunction" filed with the Arizona Supreme Court which was previously attached to his Petition (Doc. 13 at 33-40; *see also* Doc. 1 at 20-27); the Pinal County Superior Court's order denying Petitioner's pro per PCR petition which was previously attached to the Petition and Answer (Doc. 13 at 42; *see also* Doc. 1 at 29; Doc. 10-1 at 98); the Arizona Supreme Court's order denying as moot Petitioner's "Motion for Emergency Injunction" which was previously attached to the Petition (Doc. 13 at 44-46; *see also* Doc. 1-2 at 47-49); the cover page for the transcript of the grand jury proceedings held on September 29, 2014 (Doc. 13 at 48); correspondence with the Pinal County Clerk of Court directing Petitioner to contact the Court Reporters Office for copies of transcripts (*Id.* at 50); a "Notice of Documents Provided to Petitioner" reflecting that Petitioner's appointed PCR counsel mailed copies of various documents to Petitioner (Doc. 13-1 at 2-5); a pro per "Special Action" filing requesting relief from a trial court ruling in Petitioner's criminal proceedings (*Id.* at 7); correspondence with the Clerk of the United States Supreme Court reflecting that Petitioner's petition for a writ of mandamus was denied (*Id.* at 9); correspondence with the State Bar of Arizona reflecting that the state bar previously investigated and closed a matter regarding Petitioner's appointed PCR counsel (*Id.* at 11); and correspondence with the Pinal County Clerk of Court reflecting that the record for appeal was transmitted which

was previously attached to the Petition (*Id.* at 13; *see also* Doc. 1-5 at 9).

Respondents argue that Petitioner's Motion should be denied (Doc. 14). Respondents concede that their Exhibit J is not the amended petition filed on July 15, 2024, but maintain that "consideration of the amended petition for review does not affect any affirmative defense raised in their answer" (*Id.* at 1-2). Respondents do not object to Petitioner supplementing the record with a copy of the "Notice of Supervening Indictment" and the amended petition for review (*Id.* at 2; *see* Doc. 13 at 14-15, 17-31; Doc. 1-1 at 5-6; Doc. 1-2 at 31-45). Respondents also argue that Petitioner's request to add materials to the record should be denied because the requested materials are not relevant to Respondents' Answer (Doc. 14 at 2). Finally, Respondents argue that if construed as a discovery request Petitioner's request for materials should be denied because Petitioner has failed to establish good cause for such discovery (*Id.* at 2-3).

In his Reply, Petitioner insists that the requested materials are relevant to his actual innocence claim and that production of such materials would require little effort on the part of Respondents (Doc. 15). Petitioner did not attach any additional documents to his Reply (*see id.*).

Upon review of the briefing on Petitioner's Motion and associated exhibits (Docs. 13, 13-1, 14, 15), the briefing on Petitioner's Petition and associated exhibits (Docs. 1, 1-1, 1-2, 1-3, 1-4, 1-5, 10, 10-1, 10-2, 16), the record in this matter, and applicable law, the Court will deny Petitioner's "Motion for an order from the court requiring the Respondents to correct the record and furnish the missing materials in their possession pertinent to this case, a Failure to comply with Rule 5(c)" (Doc. 13). As Respondents correctly point out (Doc. 14 at 2 n.1), the record already contains the "Notice of Supervening Indictment" and the amended petition for review (*see* Doc. 13 at 14-15, 17-31; Doc. 1-1 at 5-6; Doc. 1-2 at 31-45). Thus, Petitioner's request to correct the record regarding Respondents' Exhibit A and Exhibit J will be denied.[3]

---

[3] Petitioner appears to confuse the Notice of Supervening Indictment, which notified Petitioner of an arraignment for charges against him brought by indictment, with the indictment itself. Nevertheless, both the indictment attached by Respondents and the Notice of Supervening Indictment attached by Petitioner are part of the state court record

Regarding Petitioner's request that the Court order supplementation of the record with transcripts of Petitioner's statements on 9/17/2014, the transcript of the grand jury proceedings on 9/29/2014, and the recording of the grand jury on 9/29/2014 must be added to the record (*Id.* at 5-9).  Respondents assert that they complied with Rule 5(c) and attached the only transcript relevant to their Answer—the transcript of the change of plea hearing (Doc. 14 at 2).  Upon careful review, the Court agrees with Respondents.  First, Petitioner does not articulate the relevance of the requested transcripts and recording aside from vague assertions of false evidence presented to the grand jury (Doc. 13 at 6; Doc. 15 at 2-3).  Indeed, he appears to admit that they are not relevant to his claims by stating that "Respondent[s] [are] also correct that the items requested do not pertain to the strict legal analysis of the Petitioner's grounds presented within this Habeas Corpus proceeding" (Doc. 15 at 2-3).  However, Petitioner insists that the requested materials are relevant to the issue of actual innocence (*Id.*).

To show actual innocence, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).  A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011); *McQuiggin*, 569 U.S. at 399 (explaining the significance of an "[u]nexplained delay in presenting new evidence").  Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected."  *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v.*

---

before this Court.

*Thompson*, 523 U.S. 538, 559 (1998)).[4]

Here, Petitioner is not urging the Court to consider new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. Rather and despite his later guilty pleas, Petitioner posits that he may be able to bolster a claim of actual innocence with his own statements made prior to indictment and with details about the grand jury proceedings leading to indictment. Under applicable law, the materials sought by Petitioner are not relevant to actual innocence analysis. *See Bousley*, 523 U.S. at 623; *Jaramillo*, 340 F.3d at 882-83.

Finally, Petitioner has not made a showing that he is entitled to discovery in these proceedings. In habeas proceedings, a "petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also* Fed. R. Civ. P. 26(a)(1)(B)(iii) (exempting habeas proceedings from initial discovery disclosure). The availability of discovery in habeas proceedings is governed by Rule 6 of the Rules Governing Section 2254 Cases and is within the Court's discretion. *Bracy*, 520 U.S. at 907-09; *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999). Good cause to allow discovery to proceed in a Section 2254 habeas matter may exist "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy*, 520 U.S. at 904 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). However, "[j]ust as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who wishes to seek such discovery." *Earp v. Davis*, 881 F.3d 1135, 1142-43 (9th Cir. 2018) (internal citations omitted). The Ninth Circuit has warned that a court "should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." *Calderon*

---

[4] This discussion assumes that actual innocence argument is even available in a habeas proceeding to a petitioner who pleaded guilty. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007) (acknowledging the "potential incongruity between the purpose of the actual innocence gateway announced in *Schlup* and its application to cases involving guilty (or no contest) pleas" but nevertheless "assum[ing] without deciding that the actual innocence gateway is available to [a pleading defendant]" (citation omitted)).

1    *v. U.S. Dist. Ct. for the N. Dist. of California*, 98 F.3d 1102, 1106 (9th Cir. 1996).  Petitioner

2    has not shown good cause for discovery in this matter.

3    **VI.    SUPPLEMENTAL ANSWER AND REPLY REGARDING PETITION**

4    **GROUND TWO CONSTITUTIONAL DOUBLE JEOPARDY CLAIM**

5            In their Answer, Respondents assert regarding Petition Ground Two:

6
7            Fahring claims "Illegal Sentence – Double Jeopardy – Multiplicity – Actual
        Innocence." (Doc. 1, at 29–35.) Specifically, that punishment for the
8            "simultaneous possession of 3 undefined images constitutes multiplicitous
        charging in violation of the USC Fifth Amendment's prohibition of Double
9            Jeopardy." (*Id.* at 32.) Because Fahring's claim challenges the trial court's
        application of state sentencing law, it is not cognizable in this federal habeas
10            proceeding. "[A]lleged errors in the application of state law are not
        cognizable in federal habeas corpus." *Langford*, 110 F.3d at 1389; *see*
11            *Jeffers*, 497 U.S. at 780. His assertion that his sentence was "unlawful in
        violation of the US Constitution and directly contradict SCOTUS precedent,"
12            (Doc. 1, at 5, 14–16), is not sufficient to state a claim cognizable in this
        proceeding. Fahring may also not transform a state-law issue into a federal
13            one merely by asserting a violation of federal constitutional law. *Langford*,
        110 F.3d at 1389. "An asserted violation of state law does not, without more,
14            rise to the level of a defendant's right to due process under either the Fifth or
        Fourteenth Amendments." *Bernal*, 2021 WL 7967626, at *7. For those
15            reasons, Fahring's claim is not cognizable.
16
17
        Further, Fahring's claim is waived by virtue of his guilty plea. *Tollett*, 411
18            U.S. at 267. As described above, Fahring was sentenced according to the
        terms of his plea agreement and, by virtue thereof, has waived his claim that
19            the sentence imposed according to its terms was somehow multiplicitous. *See*
        *Gonzales*, 2023 WL 9289981, at *9. Notably, each crime Fahring to which
20            pleaded guilty was based on a different image of child pornography in his
        possession, (Exhs. A & B), and required proof of a fact which the others did
21            not. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). Finally,
        Fahring's claim of "actual innocence" is also barred by *Tollett. Barclay*, 2014
22            WL 931867, at * 8. Thus, Fahring has also waived his claim by virtue of his
        plea agreement.
23
24
25    (Doc. 10 at 11-12).

26            While Respondents appear to construe Petitioner's Ground 2 claim as solely a state

27    law claim, the Court did not so construe Petitioner's Ground 2 claim as solely a state law

28    claim in screening the Petition.  The Court described that in Ground Two, Petitioner

"asserts his Fifth, Sixth, and Fourteenth Amendment rights were violated because his conviction and sentence are illegally multiplicitous . . . and his conviction violates the prohibition against double jeopardy" (Doc. 7 at 2). Upon review, it appears at least arguable that Petitioner raised and exhausted a constitutional double jeopardy claim set forth in Petition Ground Two.

Further, the Answer does not adequately address waiver of a constitutional double jeopardy claim in Petition Ground Two. The Answer cites *Tollett*, but the Answer does not cite or address *Class v. United States*, 583 U.S. 174, 178-85 (2018), in which the United States Supreme Court applied the *Menna-Blackledge* doctrine and determined that a constitutional claim based upon the state court record that would extinguish the government's power to constitutionally prosecute a defendant was not waived by a guilty plea. *See Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974) (holding that the petitioner's vindictive prosecution claim was not waived because it contested "the very power of the State" to prosecute the petitioner and the "very initiation of the proceedings against him . . . operated to deny him due process of law"); *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (holding that "a plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute."). In *Class*, the Supreme Court acknowledged that "a valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty'" but determined that the defendant's challenge was "consistent with [his] admission that he engaged in the conduct alleged in the indictment." 583 U.S. at 805 (quoting *United States v. Broce*, 488 U.S. 563, 573-74 (1989)). Thus, the Supreme Court concluded that the defendant's claims were not waived because "[t]hey challenge the Government's power to criminalize [defendant's] (admitted) conduct. They thereby call into question the Government's power to 'constitutionally prosecute' him." *Id.* (citation omitted).

In a supplemental answer to the Petition, Respondents should address whether Petitioner's double jeopardy argument that the state could constitutionally prosecute Petitioner for only one count of sexual exploitation of a minor—not three—was waived by

Petitioner's guilty pleas in light of the Supreme Court's application of the *Menna-Blacklidge* doctrine in *Class* and *Broce*; Respondents should also address the merits of such a constitutional double jeopardy claim.  Thus, the Court will order Respondents to file a supplemental answer addressing (1) whether Petitioner waived a Ground Two constitutional double jeopardy claim in light of *Class v. United States*, 583 U.S. 174, 178-85 (2018), *United States v. Broce*, 488 U.S. 563, 574-76 (1989), *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974), and *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975); and (2) regarding the merits of Petitioner's Ground Two constitutional double jeopardy claim.

It appears to the Court that there has been full compliance with all of the requirements of Rule 5 of the Rules Governing Section 2254 Cases regarding a Ground Two constitutional double jeopardy claim; nevertheless, if additional record materials are necessary to address the merits of such claim, then Respondents shall provide such with the supplemental answer.

## VII.   CONCLUSION

Upon careful review and because Petitioner has not shown that correcting the record, supplementing the record, or conducting discovery is appropriate, the Court will deny Petitioner's "Motion for an order from the court requiring the Respondents to correct the record and furnish the missing materials in their possession pertinent to this case, a Failure to comply with Rule 5(c)" (Doc. 13).

Additionally, the Court will order Respondents to file a supplemental answer addressing (1) whether Petitioner waived his Ground Two constitutional double jeopardy claim in light of *Class v. United States*, 583 U.S. 174, 178-85 (2018), *United States v. Broce*, 488 U.S. 563, 574-76 (1989), *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974), and *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975); and (2) regarding the merits of Petitioner's Ground Two constitutional double jeopardy claim.

It appears to the Court that there has been full compliance with all of the requirements of Rule 5 of the Rules Governing Section 2254 Cases regarding Petitioner's Ground Two constitutional double jeopardy claim; nevertheless, if additional record

materials are necessary to address the merits of such claim, then Respondents shall provide such with the supplemental answer.

Accordingly,

**IT IS HEREBY ORDERED** denying Petitioner's "Motion for an order from the court requiring the Respondents to correct the record and furnish the missing materials in their possession pertinent to this case, a Failure to comply with Rule 5(c)" (Doc. 13).

**IT IS FURTHER ORDERED** that **within thirty (30) days of the date of this Order**, Respondents shall file a supplemental answer addressing (1) whether Petitioner waived a Ground Two constitutional double jeopardy claim in light of *Class v. United States*, 583 U.S. 174, 178-85 (2018), *United States v. Broce*, 488 U.S. 563, 574-76 (1989), *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974), and *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975); and (2) regarding the merits of Petitioner's Ground Two constitutional double jeopardy claim.

**IT IS FURTHER ORDERED** that in filing the supplemental answer, Respondents must ensure full compliance with all of the requirements of Rule 5 of the Rules Governing Section 2254 Cases regarding Petitioner's Ground Two double jeopardy claim.

**IT IS FURTHER ORDERED** that **within thirty (30) days of service of the supplemental answer to the Petition**, Petitioner may file a supplemental reply in support of the Petition addressing the arguments in the supplemental answer.

Dated this 20th day of February, 2026.

_____
Honorable Deborah M. Fine
United States Magistrate Judge